2023 IL App (1st) 230101-U

No. 1-23-0101

Third Division
November 8, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| CHICAGO WHITE SOX, LTD.; CHISOX CORPORATION; CWS MAINTENANCE COMPANY; AT YOUR SERVICE, LLC; and AXIS INSURANCE COMPANY, Individually and as Subrogee of Chicago White Sox, Ltd., CHISOX Corporation, CWS Maintenance Company, and At Your Service, LLC, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | No. 16 CH 6403 |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY and WE CLEAN MAINTENANCE AND SUPPLIES, INC., | ) ) ) ) | The Honorable Anna M. Loftus, Judge Presiding. |
| Defendants | ) ) | |
| (AXIS Insurance Company, Plaintiff-Appellant; and State Automobile Mutual Insurance Company, Defendant-Appellee). | ) ) ) ) | |

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court properly granted summary judgment in favor of the defendant insurance company where the plaintiffs were not additional insureds under the insurance policy, as there was no written agreement between the plaintiffs and the insured requiring them to be named as such.

¶ 2    The instant appeal arises from a dispute between plaintiff AXIS Insurance Company (AXIS), as subrogee for plaintiffs Chicago White Sox, Ltd., CHISOX Corporation, CWS Maintenance Company, and At Your Service, LLC (collectively, the White Sox plaintiffs), and defendant State Automobile Mutual Insurance Company (State Auto), the insurer for defendant We Clean Maintenance and Supplies, Inc. (We Clean). After a patron was injured at a Chicago White Sox game, he filed a lawsuit against the White Sox plaintiffs, and the White Sox plaintiffs tendered the defense of that suit to State Auto, the insurer for We Clean, a company with which the White Sox plaintiffs had contracted to perform cleaning services at the ballpark. State Auto, however, rejected the tender and refused to defend the suit, claiming that the White Sox plaintiffs were not "additional insureds" under its policy. The White Sox plaintiffs—and AXIS, as their insurer—filed suit against State Auto and We Clean, alleging that State Auto had wrongfully denied coverage. Both AXIS and State Auto filed motions for summary judgment, and the circuit court granted summary judgment in favor of State Auto, finding that the White Sox plaintiffs were not "additional insureds." AXIS now appeals and, for the reasons that follow, we affirm.

¶ 3                                BACKGROUND

¶ 4                        *Parties and Underlying Lawsuit*

¶ 5    Beginning in 2008 and continuing at least through 2012, the White Sox plaintiffs entered into a series of written agreements with We Clean pursuant to which We Clean agreed to provide cleaning services for all home games played by the Chicago White Sox during the applicable baseball season.

¶ 6          In 2011, while at U.S. Cellular Field,[1] Raymond Myles was injured as he was walking down a ramp. Myles filed a lawsuit against the White Sox plaintiffs in the circuit court of Cook County (the underlying lawsuit), alleging that they were negligent in causing his injuries due to, *inter alia*, failing to inspect the premises to ensure that the ramps were free from excessive garbage. The lawsuit was later voluntarily dismissed and subsequently refiled under a different case number, and was ultimately settled for an undisclosed amount.

¶ 7          In 2014, the White Sox plaintiffs tendered the defense of the underlying lawsuit to State Auto, the insurer for We Clean, as additional insureds under We Clean's insurance policy. The White Sox plaintiffs made a second tender in 2015, but State Auto refused to provide them with a defense. A third tender was made in 2016, which State Auto again refused to accept, and the White Sox plaintiffs and AXIS, their insurer, ultimately incurred the costs of defending and settling the case.

¶ 8          *State Auto Policy and We Clean Contract*

¶ 9          As noted, We Clean was insured by State Auto under a commercial general liability insurance policy. While We Clean was the sole named insured on the policy, the policy contained an endorsement adding as an additional insured "[a]ny person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or written agreement that such person or organization be added as an additional insured on your policy."

¶ 10          As relevant to the instant appeal, We Clean entered into several "Contract[s] for Services" with the White Sox plaintiffs between 2008 and 2012 (the service contracts). All of the service

---

[1] While the facility was known as U.S. Cellular Field at the time at issue, it has since been renamed as Guaranteed Rate Field.

contracts contained the same language: "Vendor will comply with all insurance requirements set forth by the Chicago White Sox, and will provide certification of such insurance."[2]

¶ 11    As to 2008, 2009, and 2012, the record also contains an "Indemnification and Insurance Agreement," which provides that We Clean "shall procure, at its sole cost and expense, the insurance coverages set forth below, and shall maintain such coverages in full force and effect as specified in this Agreement. The Contractor shall include the Indemnified Parties and such other parties as CWS may designate as additional insureds to the insurance policies described below ***. The insurance coverage afforded under the policies described herein shall be primary and non-contributing with respect to any insurance or self-insurance carried independently by the additional insureds." The agreement further provided that We Clean "shall promptly furnish CWS with certificates of insurance evidencing the coverages hereunder, and shall not commence any services until such insurance is obtained." The "insurance policies described below" in the agreement consisted of four different types of insurance, including a commercial general liability insurance policy. No "Indemnification and Insurance Agreement" for either 2010 or 2011 is contained in the record on appeal, and an affidavit from a White Sox representative indicates that the White Sox plaintiffs were unable to locate such a document.[3]

¶ 12    Finally, the record on appeal contains certificates of insurance for each year, which provide that "[t]he following are listed as primary & non-contributory additional insured under general liability & primary additional insured under automobile liability," and which list the White

---

[2] The 2011 service contract uses the term "Client" and not "Chicago White Sox," but the provision is otherwise identical. We also note that the 2011 service contract provides that it is effective for the 2011 baseball season, but that extensions were available for the 2012 and 2013 baseball seasons. Accordingly, there is no separate service contract for the 2012 baseball season.

[3] We also note that, in its motion for summary judgment, AXIS indicates that "We Clean did not sign separate Indemnification and Insurance Agreements for years 2010 and 2011."

Sox plaintiffs as additional insureds. The certificates of insurance include disclaimers that "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER," and that "[i]f the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. *** A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s)" (emphases in original).

¶ 13                                    *Complaint*

¶ 14        The White Sox plaintiffs filed a complaint for declaratory judgment in May 2016; the complaint was amended twice and it is the second amended complaint, which added AXIS as a plaintiff, which was the operative complaint at the time of the motions for summary judgment at issue in the instant appeal. While the second amended complaint raised a total of 11 counts, we discuss here only the ones relevant to the issues on appeal.

¶ 15        Count I of the complaint was against State Auto for breach of contract concerning the underlying lawsuit, and alleged that State Auto breached its 2010-11 policy by refusing to provide a defense to the underlying lawsuit. Count II alleged that, due to State Auto's unreasonable refusal to defend the underlying lawsuit, it should be estopped from raising any defenses to coverage. Count III was similar to count I, except it alleged that State Auto had breached its duty to indemnify the expenses incurred in the underlying lawsuit. Count IV alleged a violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)) based on State Auto's conduct. Count V sought equitable subrogation, as the complaint alleged the AXIS insurance policy was secondary to the State Auto policy, while count VI, in the alternative, requested equitable contribution for the amounts expended by AXIS. Finally, count

VIII[4] was for declaratory judgment, and sought a declaration that State Auto was responsible for paying the amounts owed by We Clean for We Clean's breach of the contract between We Clean and the White Sox plaintiffs, which required We Clean to provide a defense and indemnification to the White Sox plaintiffs with respect to the underlying lawsuit.

¶ 16 Both AXIS and State Auto ultimately filed motions for partial summary judgment with respect to counts I, II, III, IV, V, and VIII of the second amended complaint.[5] Both motions primarily concerned the question of whether the 2011 service contract constituted a written agreement that the White Sox plaintiffs be added as additional insureds on the State Auto policy such that they would be afforded coverage under We Clean's policy. AXIS contended that the service contract, which required We Clean to comply with the White Sox plaintiffs' "insurance requirements," sufficed despite the absence of a 2011 indemnification and insurance agreement, based on the parties' course of conduct. State Auto, by contrast, maintained that the absence of an indemnification and insurance agreement meant that We Clean and the White Sox plaintiffs never expressly agreed to add the White Sox plaintiffs as additional insureds under We Clean's policy, as required by the terms of the policy.

¶ 17 On December 15, 2022, the circuit court granted State Auto's motion for summary judgment on counts I, II, III, IV, V, and VIII. The circuit court found that the provision in the

---

[4] We note that the second amended complaint contains two counts labeled "count VIII." Only the first is at issue on appeal. We additionally note that count VII was directed at We Clean, but the record indicates that the company was dissolved in November 2016, and the circuit court entered an order of default against We Clean in October 2020.

[5] The White Sox plaintiffs also filed a motion for partial summary judgment, which incorporated the AXIS motion and also sought summary judgment on the second "count VIII" and on count IX, both of which concerned a different lawsuit that is not at issue on appeal. State Auto also filed a cross-motion for summary judgment on the second "count VIII" and on count IX. At the time of the hearing on the motions for summary judgment at issue on appeal, however, the parties informed the circuit court that the claims concerning the other lawsuit "ha[ve] been resolved," and the circuit court later entered an order dismissing those counts with prejudice.

service contract that We Clean "comply with all insurance requirements" was not ambiguous and it therefore could not look to parol evidence to determine whether the insurance requirements included adding the White Sox plaintiffs as additional insureds to We Clean's insurance policy. The circuit court further found that there was no just reason to delay enforcement or appeal of its order, as judgment had been entered in favor of State Auto and against AXIS. AXIS timely filed a notice of appeal, and this appeal follows.[6]

¶ 18                                              ANALYSIS

¶ 19        On appeal, AXIS contends that the circuit court erred in granting summary judgment in favor of State Auto, as the evidence established that the White Sox plaintiffs were additional insureds under We Clean's insurance policy. A circuit court is permitted to grant summary judgment only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The circuit court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a circuit court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 20        Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 63. However, mere speculation, conjecture, or guess is insufficient to withstand summary judgment. *Sorce v. Naperville Jeep Eagle, Inc.*, 309

---

[6] We note that, after the filing of the notice of appeal, the circuit court entered an order which "*nunc pro tunc*" granted summary judgment in State Auto's favor on count VI of the second amended complaint, which had been pleaded in the alternative.

Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively demonstrating that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (citing *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)).

¶ 21 Where, as here, the parties have filed cross-motions for summary judgment, "they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of such cross-motions, however, does not establish that there is no genuine issue of material fact, nor does it obligate a court to render summary judgment. *Id.* We also note that we may affirm on any basis appearing in the record, whether or not the circuit court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 22 In this case, the sole issue is whether the White Sox plaintiffs qualified as additional insureds under We Clean's insurance policy. Under the terms of the policy, State Auto agreed to cover "[a]ny person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or written agreement that such person or organization be added as an additional insured on your policy." The 2011 service contract, which was the contract in operation at the time of Myles' injury, provided that "Vendor will comply with all insurance requirements set forth by Client, and will provide certification of such insurance." Unlike other years, however, there was no accompanying

8

"Indemnification and Insurance Agreement" in which such insurance requirements were detailed. State Auto therefore maintains—and the circuit court agreed—that the service contract was insufficient to constitute a "written contract or written agreement" in which We Clean agreed to add the White Sox plaintiffs as additional insureds under its policy. AXIS, by contrast, claims that the circuit court should have looked to extrinsic evidence to conclude that the "insurance requirements" of the 2011 service contract included the requirement that the White Sox plaintiffs be added as additional insureds.

¶ 23    In construing a contract, the primary objective is to give effect to the intention of the parties. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). A court will first look to the language of the contract itself, and if the words in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. *Id.* If, however, the language is ambiguous, the court may consider extrinsic evidence to determine the parties' intent. *Id.* A contract is not rendered ambiguous simply due to the parties' disagreement as to its meaning. *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 33. Instead, it is considered ambiguous "when the contract language 'is susceptible to more than one meaning or is obscure in meaning.' " *Id.* (quoting *Wolff v. Bethany North Suburban Group*, 2021 IL App (1st) 191858, ¶ 37).

¶ 24    In this case, there is no dispute that the language of the insurance policy is clear and unambiguous—it clearly provides coverage for "[a]ny person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or written agreement that such person or organization be added as an additional insured on your policy." See also *Westfield Insurance Co. v. FCL Builders, Inc.*, 407 Ill. App. 3d 730, 733-34 (2011) (construing identical language). The only question is whether the terms

9

of the 2011 service contract satisfy the conditions of the insurance policy. We agree with State Auto and the circuit court that they do not.

¶ 25    First, the language of the service contract merely requires We Clean to "comply with all insurance requirements set forth" by the White Sox plaintiffs and does not expressly require We Clean to name the White Sox plaintiffs as additional insureds under its insurance policy. Several courts have found that the lack of such express language is fatal to a claim that a party is an additional insured. See, *e.g.*, *id.* at 734 (finding general contractor not to be an additional insured where there was no direct agreement between the general contractor and the sub-subcontractor requiring it to name the general contractor as an additional insured); *West Bend Mutual Insurance Co. v. Athens Construction Co.*, 2015 IL App (1st) 140006, ¶ 28 (finding general contractor not to be an additional insured where agreement between general contractor and subcontractor merely required subcontractor to state that the general contractor was an additional insured on a certificate of insurance).

¶ 26    Additionally, we cannot agree with AXIS that the term "insurance requirements" in the service contract is ambiguous such that we may look to extrinsic evidence to determine whether such "insurance requirements" included a requirement that the White Sox plaintiffs be added as additional insureds. AXIS contends that a court may use extrinsic evidence to determine the terms of a contract where those terms are missing from the contract itself. See *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991) (a contract may be enforced even though some of the terms may be missing); *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1091 (2003) (same). In this case, however, there are no missing terms or unclear terms—the service contract specifically states that We Clean is to comply with the White Sox plaintiffs' "insurance requirements." The problem is that there apparently *were* no insurance

requirements in 2011, at least none that were reduced to writing. Thus, without a written agreement that the White Sox plaintiffs were to be named as additional insureds under We Clean's policy, there is no basis for finding that they were, in fact, additional insureds and the circuit court properly granted summary judgment in favor of State Auto.

¶ 27    We do not find persuasive AXIS' reliance on *Old Republic Insurance Co. v. Kenny Construction Co.*, No. 15-CV-03524, 2017 WL 4921970 (N.D. Ill. Oct. 31, 2017). First, this case is an unpublished federal district court case, and it is well established that such cases are not binding on this court. See, *e.g.*, *Kerbes v. Raceway Associates, LLC*, 2011 IL App (1st) 110318, ¶ 34; *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 63; *FHP Tectonics Corp. v. American Home Assurance Co.*, 2016 IL App (1st) 130291, ¶ 45 n.4; *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 63 n.27. Moreover, the facts in *Kenny Construction* differ significantly from those in the case at bar. There, the subcontract at issue provided that " '[s]ubmittal of the subcontractor's evidence of insurances shall include the contractor, the owner and *any other additional insureds* as required per the Insurance Requirement Sheet attached thereto.' " (Emphasis added.) *Kenny Construction*, No. 15-CV-03524, 2017 WL 4921970, *1. The district court was therefore required to determine if the reference to "other additional insureds" meant that the prior listed entities—the contractor and the owner—were also additional insureds. *Id.* *4. Since the term was susceptible to two different meanings, the district court looked to parol evidence to resolve the ambiguity. *Id.* *5. Here, by contrast, there are no competing inferences such that parol evidence is necessary to resolve any ambiguity and accordingly, we find *Kenny Construction* to be inapposite.

¶ 28                                              CONCLUSION

¶ 29         For the reasons set forth above, we affirm the circuit court's grant of summary judgment

in favor of State Auto. Since there was no written agreement between We Clean and the White

Sox plaintiffs requiring the White Sox plaintiffs to be named as additional insureds under We

Clean's policy, the White Sox plaintiffs were not entitled to coverage by State Auto.

¶ 30         Affirmed.