2023 IL App (1st) 220235-U

No. 1-22-0235

Third Division
May 10, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PREFERRED RISK MUTUAL INSURANCE COMPANY, now known as GuideOne Mutual Insurance Company, | ) ) ) ) | |
| Plaintiff and Counterdefendant-Appellee and Cross-Appellant, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | |
| CHURCH EXTENSION BOARD OF THE PRESBYTERY OF CHICAGO, CHICAGO PRESBYTERIAN CHURCH, and PRESBYTERY OF CHICAGO, | ) ) ) ) ) | No. 2016 CH 05727  The Honorable David B. Atkins, Judge Presiding. |
| Defendants | ) ) | |
| (Church Extension Board of the Presbytery of Chicago, Defendant and Counterplaintiff-Appellant and Cross-Appellee). | ) ) ) | |

JUSTICE REYES delivered the judgment of the court.
Presiding Justice McBride and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court properly found (1) that the plaintiff insurer owed a duty to defend and indemnify the defendant church for sexual abuse claims occurring prior to 1987, but did not owe such a duty for claims occurring in 1988 or later, as those claims were barred by a prior release, and (2) that sanctions were not appropriate for the insurer's denial of coverage, as there was a *bona fide* dispute as to the scope of the release.

¶ 2    The instant appeal arises from an insurance coverage dispute between plaintiff GuideOne Mutual Insurance Company (GuideOne) and defendant Church Extension Board of the Presbytery of Chicago[1] (the Presbytery) concerning claims of sexual abuse by a former church pastor. Previous coverage litigation had resulted in a settlement and release agreement between the parties, and GuideOne contended that the release applied to also bar coverage for the newly-alleged claims. GuideOne accordingly filed the current declaratory judgment action, seeking a declaration that it owed no duty to defend or indemnify the Presbytery with respect to those claims. Both parties filed motions for summary judgment, and the circuit court granted both in part, finding that the release barred coverage for some, but not all, of the claims and that GuideOne owed a duty to defend and indemnify with respect to the remaining claims. The Presbytery also requested sanctions under section 155 of the Insurance Code (215 ILCS 5/155 (West 2020)), which the circuit court declined to impose. Both parties now appeal and, for the reasons set forth below, we affirm.

¶ 3                                    BACKGROUND

¶ 4                                *Insurance Policies*

¶ 5    From January 1, 1981, through January 1, 2004, GuideOne insured the Presbytery under a number of commercial general liability policies; while the 1981-84 and 1984-87 policies were for three-year terms, the remainder of the policies were for one-year terms. The policies contained, *inter alia*, "sexual misconduct liability coverage," which covered the Presbytery's

---

[1] While we list all party names in the caption, according to the notice of appeal, "the actual name of the Defendant should be Church Extension Board of the Presbytery of Chicago, which is the Illinois not-for-profit corporation that owns the property of the Presbytery of Chicago and transacts the business of the Presbytery of Chicago. The Presbytery of Chicago is a judicatory of the Presbyterian Church U.S.A. There is no entity named Chicago Presbyterian Church."

legal liability for damages sustained by a person as a result of sexual misconduct which first commenced during the policy period.[2] In describing limits to this coverage, beginning in 1988, the policies provided that "[a]ll acts of sexual misconduct by one person, *** or any breach of duty causing or contributing to such acts will be considered one occurrence in determining our liability under this section"; prior to the 1988 policy, no such language appeared in either the 1981-84 policy or the 1984-87 policy. As of 1992, the policies further limited coverage by adding that "[r]egardless of the period of time over which such acts occur or when damages are sustained, all acts of sexual misconduct by one person, *** or any breach of duty causing or contributing to such acts, will be considered one occurrence in determining our liability under this section."

¶ 6        The policies from 1981-84 and 1984-87, which were for three-year terms, contained limits of $500,000 in the aggregate. The 1988 policy contained a limit of $100,000 per occurrence and $300,000 in the aggregate. Finally, the policies from 1990 and thereafter contained limits of $250,000 per occurrence and $500,000 in the aggregate.

¶ 7                                        *2005 Litigation and 2010 Release*

¶ 8        In 2005, the Presbytery filed a declaratory judgment lawsuit against GuideOne, seeking coverage in relation to claims involving Douglas Mason, a former pastor with the church. According to the complaint, seven John Doe plaintiffs had filed suit against the Presbytery, alleging abuse by Mason in the 1980s and 1990s, and the Presbytery tendered the defense of the suits to GuideOne, which accepted the defense and outlined its position as to the limits of

---

[2] We note that the 1981-84 policy and the 1984-87 policy did not make specific reference to sexual misconduct. The Presbytery alleged that sexual misconduct claims were encompassed under the general liability coverage afforded by the policies, and GuideOne has never sought to deny coverage on the basis that sexual misconduct claims were not included under the policies. Beginning in 1988, the policies contained a separate "Sexual Misconduct Liability Coverage Form" specifically addressing sexual misconduct claims.

its coverage. GuideOne's position was that the Presbytery's coverage was limited to $250,000, as the claims represented a single "occurrence" under the policy. The Presbytery, by contrast, contended that coverage should be $500,000, as each victim's claim should be considered a separate "occurrence." The Presbytery accordingly filed its declaratory judgment suit in order to resolve the dispute as to the appropriate coverage limits.[3]

¶ 9     In 2010, the parties ultimately settled the lawsuit and executed a release. As the terms of the release are the focus of the instant appeal, we discuss them in considerable depth. The release begins with a set of 18 "whereas" paragraphs, setting forth the history of the litigation resulting in the execution of the release. Specifically, these paragraphs explain that in 2002, John Does I though IV filed a lawsuit against the Presbytery, among others, in which they alleged that "prior to 1997, dating back at least until 1988," multiple employees of the Presbytery had actual knowledge that Mason had sexually abused children. John Doe V filed a separate lawsuit in South Dakota that same year, and that case was consolidated into the Illinois case after being transferred to Cook County. In his lawsuit, John Doe V alleged that Mason "sexually abused children on and after January 1988; and also abused Doe V during 1994, 1996, and 1997." In 2005, John Doe VII[4] filed a similar lawsuit, in which he alleged that Mason "sexually abused children on and after January 1990; and also abused Doe VII on and after March 1997 at least one time per week through January 2001." This lawsuit was also consolidated into the lawsuit brought by John Does I through V. Finally, in 2006, John Doe

---

[3] The record demonstrates that, during the pendency of the 2005 litigation, the underlying lawsuits were resolved, with GuideOne paying $600,000 for the seven plaintiffs: $100,000 for the 1988-89 policy year, $250,000 for the 1995-96 policy year, and $250,000 for the 1997-98 policy year. There is some suggestion that GuideOne also paid $250,000 for the 1996-97 policy year, based on GuideOne's letters denying coverage in the instant litigation. As GuideOne has repeatedly indicated that it paid a total of $850,000 with respect to the 2005 litigation and the suits underlying it, that means that the $250,000 it paid under the release at issue in the instant appeal would have been allocated to the 1996-97 policy year.

[4] The release indicates that there is no John Doe VI related to this matter.

VIII filed a similar lawsuit, which was consolidated into the other lawsuit; in his lawsuit, John Doe VIII alleged that Mason "sexually abused children on and after January 1988."

¶ 10 The "whereas" paragraphs further explain that GuideOne insured the Presbytery from January 1, 1981, though January 1, 2004, and that the insurance policies included limited coverage under a "Sexual Misconduct Liability Coverage Form." As a result, GuideOne agreed to defend the Presbytery in the John Doe lawsuits pursuant to a reservation of rights. The Presbytery filed a declaratory judgment action seeking "any and all insurance coverage available under any and all policies" issued by GuideOne, while GuideOne took the position that it "has made satisfactory payments" to fulfill its obligations under the policies.

¶ 11 Following the "whereas" paragraphs, the release contains 13 paragraphs setting forth the terms of the release. As relevant to the instant appeal, paragraph (a) provides:

"For the consideration of $250,000 (two hundred and fifty thousand dollars) ("the Settlement Payment"), [the Presbytery] for and on behalf of the Releasing Parties, release and forever discharge the Released Parties from all claims, causes of action, demands, damages, costs, expenses, interest, compensation, actions, judgments, or suits of any kind in law or equity, including, but not limited to the claims made by [the Presbytery] against [GuideOne], arising out of or related to any and all claims falling within the time periods set forth above, inclusive."

Paragraphs (c) and (d) further define the scope of the release as follows:

"c. This General Release covers any and all claims of [the Presbytery] of any nature, including any potential or actual claims for bad faith, and any and all claims pursuant to Section 155 of the Illinois Insurance Code.

d. This General Release covers all liability for any past, present, or future claims for or related to insurance coverage, which the Releasing Parties have or may have arising out of the above-referenced alleged actions or alleged wrongdoing of Releasing Parties, whether those claims are known or unknown or foreseen or unforeseen."

Paragraph (e) additionally clarified:

"The Releasing Parties execute this General Release to affect [*sic*] a compromise settlement of claims which are in dispute. Neither this General Release, nor the payment of the consideration given for this General Release, should be construed to be a concession or admission concerning the liability of any party."

Finally, paragraph (i) provided:

"The Releasing Parties represent and warrant that they have read this General Release and understand the terms of this General Release and the consequences of signing it, and that they have had an opportunity to discuss this General Release with counsel."

¶ 12                                    *2015 John Doe Lawsuits*

¶ 13        In 2015, seven additional John Doe plaintiffs filed lawsuits against the Presbytery, alleging abuse by Mason. In Doe 1 v. Chicago Presbyterian Church, no. 2015 L 000574 (Cir. Ct. Cook Co.) (case 574), three John Doe plaintiffs alleged that Mason had abused them: the first alleged abuse between 1983 and 1986, the second alleged abuse between 1983 and 1985, and the third alleged abuse between 1982 and 1984 or 1985. Each John Doe plaintiff alleged counts of negligence, fraudulent concealment, and equitable estoppel against the Presbytery in connection with the abuse. In Doe 1 v. Chicago Presbyterian Church, no. 2015 L 000576 (Cir. Ct. Cook Co.) (case 576), an additional four John Doe plaintiffs alleged abuse: the first alleged that he had been abused between 1992 and 1996, the second alleged that he had been abused

between 1991 and 1999, the third alleged that he had been abused between 1994 and 1998, and the fourth alleged that he had been abused between 1992 and 1998. As in case 574, each John Doe plaintiff alleged counts of negligence, fraudulent concealment, and equitable estoppel against the Presbytery in connection with the abuse.

¶ 14    The Presbytery tendered the defense of both lawsuits to GuideOne. In a letter dated December 21, 2015, GuideOne claimed that, through the 2010 release, the Presbytery had released all claims for coverage dating back to at least 1988. As this entirely encompassed the time periods of the abuse alleged in case 576, GuideOne denied coverage for that suit. As to the claims in case 574, GuideOne agreed to defend the Presbytery under a reservation of rights, based upon potential coverage available under policies issued prior to 1988. The Presbytery sent GuideOne a letter requesting that it reverse its denial of coverage for case 576. It did not reverse its position and instead filed the lawsuit at issue in the instant appeal.

¶ 15    During the pendency of the litigation, two more John Doe plaintiffs filed suit against the Presbytery, alleging abuse by Mason. In Doe 5 v. Chicago Presbyterian Church, no. 2017 L 000646 (Cir. Ct. Cook Co.) (case 646), the plaintiff alleged that he had been abused by Mason beginning in 1982 or 1983 and continuing through 1986. In Doe 6 v. Chicago Presbyterian Church, no. 2017 L 000644 (case 644), the plaintiff alleged abuse between 1986 and 1988. GuideOne denied coverage for both suits in a letter dated September 20, 2017, claiming that the release operated to bar coverage for the suits.

¶ 16                                 *Current Litigation*

¶ 17    In 2016, GuideOne filed a complaint for declaratory judgment against the Presbytery, seeking a declaration that it owed no duty to defend or indemnify in case 574 or case 576; it later amended its complaint to add a request for a similar declaration in cases 644 and 646. The

7

amended complaint alleged that GuideOne defended the Presbytery in case 574 under a reservation of rights, and paid $75,000 to help resolve the suit. The amended complaint further alleged that all four lawsuits settled in November 2017, with the Presbytery paying the following amounts to resolve each: (1) $30,000 in case 574, (2) $285,000 in case 576, (3) $95,000 in case 644, and (4) $95,000 in case 646. [5]

¶ 18        Count I alleged that the Presbytery released all its claims for coverage when it executed the release in 2010. Count II alleged that coverage for the claims was barred by the insurance policies' "known loss" exclusion, as the underlying complaints alleged that the Presbytery had actual knowledge of Mason's abuse. Count III alleged that there was no coverage to the extent that any of the underlying complaints alleged the violation of criminal statutes. Count IV alleged that GuideOne had fulfilled any and all payment obligations by paying $850,000 in the prior lawsuits, as well as by paying $75,000 in case 574 despite having no obligation to do so. In the alternative, count V alleged that there was no coverage to the extent that any of the underlying complaints sought punitive damages and count VI alleged that to the extent any coverage was available, the actions of Mason would constitute a single occurrence under the insurance policies. Finally, count VII alleged that the Presbytery had breached the policies' cooperation clause, which precluded any coverage.

¶ 19        The Presbytery filed an answer and counterclaim, in which it "vehemently denie[d]" releasing all claims under the insurance policies. The Presbytery alleged that it released only claims from the years at issue in the 2005 litigation, not the years at issue in the 2015 John Doe lawsuits. Counts I and II of the Presbytery's counterclaim were for declaratory judgment and

---

[5] We note that the $30,000 paid by the Presbytery in case 574 was in addition to the $75,000 paid by GuideOne, for a total settlement of $105,000. In its answer, the Presbytery admitted the accuracy of these amounts it paid in cases 574, 644, and 646, but alleged that it paid $380,000, not $285,000, to resolve case 576.

sought a declaration that it was entitled to coverage under the insurance policies; the Presbytery's position was that, for each victim, each of the years he alleged abuse gave rise to a separate "occurrence" under the applicable policy. Thus, the Presbytery alleged that it was entitled to the following coverage: (1) $2.5 million in case 574 ($500,000 in aggregate coverage for each of five years),[6] (2) $1 million in case 576 ($250,000 for each of four occurrences), (3) $1.1 million in case 644 ($500,000 each for occurrences in 1986 and 1987, plus $100,000 for an occurrence in 1988), and (4) $2 million in case 646 ($500,000 for each of four occurrences). All four cases were settled for substantially less than the alleged coverage limits. Count III sought damages under section 155 of the Insurance Code for what it alleged was GuideOne's bad faith denial of coverage. Count IV was for breach of contract and alleged that GuideOne's refusal to provide insurance coverage constituted a breach of contract which had damaged the Presbytery.

¶ 20                               *First Motions for Summary Judgment*

¶ 21        Both parties ultimately filed motions for summary judgment concerning the scope of the release. The Presbytery filed a motion for partial summary judgment as to all issues relating to the construction and scope of the release, contending that the release applied only to the claims at issue in the 2005 litigation. The Presbytery further claimed that interpreting the release to encompass claims which did not exist at the time of its execution would violate public policy. GuideOne filed its own motion for summary judgment, contending that the release unambiguously applied to bar any coverage GuideOne might otherwise owe to the Presbytery arising from the underlying abuse claims.

---

[6] The circuit court ultimately granted GuideOne's motion to dismiss with respect to the allegations concerning case 574, finding that GuideOne had fully defended the Presbytery in that litigation, so there was no longer any controversy to be resolved.

¶ 22    On July 1, 2019, the circuit court granted in part and denied in part the parties' cross-motions for summary judgment. The court noted that GuideOne claimed that the release barred all coverage for claims of sexual abuse involving Mason, including those not known to the parties at the time of the release, while the Presbytery claimed that it applied only to the prior claims at issue. The court, however, found that "neither party is entirely correct." The circuit court found that the release "clearly contemplates at least some claims beyond those specifically referenced," as it contained multiple uses of broader language such as " 'any and all claims' " and " 'any past, present or future claims for or related to insurance coverage *** whether those claims are known or unknown or foreseen or unforeseen.' " At the same time, the circuit court found that "it also does not apply to all claims without limitations whatsoever," as it was expressly limited in both time and scope by paragraphs (a) (which referred to " 'claims falling within the time periods set forth above' ") and (d) (which referred to claims " 'arising out of the above-referenced alleged actions or alleged wrongdoing' " of the Presbytery).

¶ 23    With respect to the scope, the circuit court found that the 2015 John Doe suits "generally fall within the Release," as the Presbytery's alleged wrongdoing—negligently failing to prevent Mason's abuse of children—was substantially the same in both the prior and current cases, and the parties' agreement clearly contemplated the possibility of additional claims by other plaintiffs. With respect to time, however, the circuit court found that the release was "more limited," as a review of " 'the time periods set forth above' " demonstrated that all of the underlying cases "consistently alleged conduct occurring in and after 1988." The court found that these references to the underlying lawsuits, as well as the absence of any reference to any year prior to 1988 "make clear that it was limited to claims involving Mason (then known or unknown) arising in and after 1988." Accordingly, the circuit court found that the

release barred any claims arising out of underlying lawsuits alleging abuse by Mason which occurred in or after 1988.

¶ 24    The Presbytery filed a motion to clarify the circuit court's order, seeking clarification as to (1) the specific time periods encompassed by the release, (2) the status of cases 644 and 646, and (3) the scope of the applicability of section 155 of the Insurance Code. The Presbytery noted that the earlier John Doe lawsuits alleged abuse of the specific plaintiffs in 1988 and then from 1995 to 2001—not all years from 1988 to 2001—and sought clarification as to whether the release was limited to those specific years or to the larger date range. The Presbytery also sought an express finding by the circuit court that GuideOne should have provided a defense and indemnification in cases 644 and 646, both of which involved claims prior to 1988. Finally, the Presbytery sought clarification as to whether the release covered its section 155 claims with respect to the John Doe actions currently at issue.

¶ 25    On September 27, 2019, the circuit court denied the Presbytery's motion to clarify, finding no basis to " 'clarify' " its July 1 order. The court first noted that its order was "entirely clear" that the release applied to Mason's alleged conduct occurring in and after 1988. The court next explained that it had not expressly found a duty to defend or indemnify in cases 644 and 646 since "entry of such judgment was simply beyond the scope of the Motions, which sought only a legal interpretation of the Release," and declined to expand that ruling. Finally, the court found that there was no ambiguity as to its order concerning section 155 claims, as "[t]he only reasonable interpretation thereof is that the Release covers bad faith claims arising out of cases which are *themselves* subject to the release (i.e. as to conduct in and after 1988)." (Emphasis in original.)

11

¶ 26                    *Second Motions for Summary Judgment*

¶ 27          After the circuit court's interpretation of the release, both parties filed second motions for summary judgment concerning the issue of GuideOne's duty to defend and indemnify the Presbytery for the underlying lawsuits. The Presbytery's motion for summary judgment sought a declaration (1) that GuideOne owed a defense and indemnification for cases 644 and 646 and (2) that GuideOne had only partially indemnified it for case 574 and therefore owed the Presbytery full indemnification. The Presbytery also sought a finding that GuideOne's refusal to defend and indemnify the Presbytery in cases 644 and 646 was vexatious and unreasonable under section 155. Finally, the Presbytery sought a declaration as to the meaning of "annual aggregate" in two of the policies and the meaning of "occurrence" in each of the policies. Attached to its motion for summary judgment was, *inter alia*, an affidavit from the Presbytery's treasurer, who averred that (1) the Presbytery paid $105,000 to resolve case 574, of which GuideOne paid $75,000 along with reimbursing the Presbytery for its costs and expenses of defense; (2) the Presbytery paid $95,000 to resolve case 646, along with $2173.30 in attorney fees, costs, and expenses of defense, none of which was reimbursed by GuideOne; and (3) the Presbytery paid $95,000 to resolve case 644, along with $1116 in attorney fees, costs, and expenses of defense, none of which was reimbursed by GuideOne.

¶ 28          GuideOne's motion for summary judgment, by contrast, claimed that (1) any issues concerning case 574 were moot, as the Presbytery's counterclaim concerning that case had been previously dismissed; (2) the release barred coverage for cases 576 and 644, as they alleged conduct occurring in 1988 or later; and (3) there was no duty to indemnify in case 646, as the Presbytery had not demonstrated that it fell within the scope of any coverage provided by the policies. GuideOne further claimed that it was entitled to summary judgment on the

Presbytery's section 155 claim, as GuideOne had provided a defense under a reservation of rights in all four lawsuits.[7]

¶ 29      On December 30, 2020, the circuit court entered an order on the parties' second motions for summary judgment. The court noted that it had previously found that the release barred claims under policies issued in and after 1988, and "[t]he parties thus agree Case 576 is no longer at issue (involving only post-1988 allegations), and now seek summary judgment on coverage as to Cases 644 and 646." The court further noted that the Presbytery also raised a claim as to additional indemnification in case 574, but found that all such claims were previously dismissed as a result of the Presbytery's prior admission that it had been defended and indemnified and "the Presbytery offers no persuasive reason to raise them again now."

¶ 30      The circuit court found that the allegations of abuse constituted an "occurrence" under the policies and, therefore, there was a duty to indemnify[8] in case 646, which involved solely pre-1988 claims. The court further found that this duty extended to case 644, which alleged conduct beginning and occurring prior to 1988, even though the conduct allegedly continued into 1988. The court declined to specify exactly how many occurrences the cases alleged, as all of them had been settled for amounts less than the coverage limits and "[a]ny such determination would thus be advisory at this time." The court also declined to find a sufficient basis for sanctions under section 155, finding that GuideOne's interpretation of the release was not "plainly

---

[7] In its response to GuideOne's motion, the Presbytery claimed that this statement was false and that GuideOne had defended the Presbytery only in case 574. The record provides no support for GuideOne's claim that it defended the Presbytery in all four lawsuits. While the same law firm represented the Presbytery in all four cases, the letter in which GuideOne agreed to defend the Presbytery in case 574 indicated that the Presbytery would select its own counsel and GuideOne would pay the costs associated with defending case 574. The same letter—as well as a supplemental letter after the tender of defense in cases 644 and 646—unequivocally denies coverage in any other case.

[8] The court noted that the duty to defend was "no longer directly disputed," as the cases had been resolved by settlement.

unreasonable" and its denial of coverage on that basis was not vexatious. The court accordingly found:

> "For these reasons, judgment is hereby entered in favor of [the Presbytery] and against [GuideOne] in that the court finds Plaintiff GuideOne has a duty to indemnify [the Presbytery] in the settlement amounts of the underlying cases 17 L 644 and 17 L 646. Judgment is entered against [the Presbytery] and in favor of [GuideOne] in all other respects. This is a final and appealable order."

¶ 31       The Presbytery filed a motion to reconsider, asking the circuit court to reconsider its July 1, 2019, and December 30, 2020, orders with respect to its findings that (1) there was no coverage for case 576, (2) sanctions under section 155 were not warranted, and (3) there was no reason to expressly find that there was a duty to defend in cases 644 or 646. The Presbytery also noted that the court's December 30 order did not expressly set forth the amounts GuideOne owed the Presbytery for defense and indemnification in cases 644 or 646. In response, GuideOne asked that the Presbytery's motion to reconsider be denied, but also requested that the court find that it owed no duty to defend or indemnify in cases 576, 644, or 646.

¶ 32       On January 21, 2022, the circuit court entered an order denying the motion to reconsider. As an initial matter, the court found GuideOne's argument concerning coverage for cases 644 and 646 "inexplicable," finding that the court's "December 30 Order was explicitly final, judgment was entered against it to that effect, it has never moved to reconsider that judgment, and it is therefore absolutely required to indemnify the [Presbytery] for those sums to the extent it has not already done so." With respect to the claim that the order did not specify the amounts owed, the court found that "[t]he Order was clear on the limits of such coverage and even

referenced final settlement amounts in specific cases. No further clarity is necessary." Nevertheless, the court noted:

> "[The Presbytery] for the first time raises a modest amount of attorney fees and costs ($3,289.30) allegedly incurred in reaching those settlements. While it previously argued the dispute was solely as to indemnity of the settlement amounts, it is correct that [GuideOne's] duty to indemnify includes a duty to defend, and the December 30 Order thus also requires it to pay for any such reasonable fees to the extent it has not done so."

¶ 33    The Presbytery timely filed a notice of appeal, and GuideOne timely filed a notice of cross-appeal.

¶ 34                                   ANALYSIS

¶ 35    On appeal, the parties dispute the scope of the release, with the Presbytery contending that it released only the claims at issue in the 2005 litigation and GuideOne asserting that it released all claims from 1981 through 2004. The Presbytery further claims that the circuit court erred in declining to impose sanctions pursuant to section 155 of the Insurance Code. Prior to considering the parties' arguments, however, we must consider our jurisdiction over the instant appeal.

¶ 36                            *Appellate Jurisdiction*

¶ 37    One of the contentions of error raised by the Presbytery is its claim that the circuit court's December 30 order was not final since it did not specify the dollar amount of the judgment entered against GuideOne. While the Presbytery suggests that this may be remedied by this court entering such an order, the reality is not so simple. If, as the Presbytery contends, the circuit court's order is not a final order, we lack jurisdiction over the instant appeal and must

dismiss it without considering the merits of the parties' arguments. Accordingly, although the Presbytery raises the issue as its final argument on appeal, we address it first.[9]

¶ 38   "Appellate jurisdiction is confined to reviewing final judgments unless the order to be reviewed comes within one of the exceptions for interlocutory orders specified by the supreme court." *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 950 (1992). In general, a final and appealable judgment is defined as "one in which the trial court has determined the merits of the parties' claim, such that the only remaining action is to proceed with execution of the judgment." *In re Estate of French*, 166 Ill. 2d 95, 101 (1995). The question of whether we have jurisdiction over an appeal presents a question of law, which we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25; *In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 39   Here, the Presbytery claims that, since the circuit court's order did not specify a dollar amount of the judgment, it cannot be said that "the only remaining action is to proceed with execution of the judgment" (*French*, 166 Ill. 2d at 101). In support of its argument, it points to *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 395 Ill. App. 3d 501, 505 (2009), a case in which the Second District dismissed an appeal for lack of jurisdiction where the circuit court had stayed the determination of the amount of attorney fees until after the resolution of the appeal. The *Lamar Whiteco* court found that this rendered the circuit court's order nonfinal,

---

[9] We note that GuideOne does not address the Presbytery's argument as to the finality of the order in either of its briefs on appeal.

as "[t]he judgment is not ready to be executed because the amount of fees and costs has not been determined." *Id.*

¶ 40    The same concerns, however, are not present in the instant case. Here, in its December 30 order, the circuit court found that "Plaintiff GuideOne has a duty to indemnify [the Presbytery] *in the settlement amounts* of the underlying cases 17 L 644 and 17 L 646." (Emphasis added.) As both cases had already been settled at the time of the circuit court's order, these were fixed amounts known by the parties—in this case, $95,000 each. Moreover, even if there was a question as to the amount of the judgment, the circuit court removed any such question in its January 21 order denying the motion to reconsider, where it stated that the amount of the judgment was the settlement amounts. To the extent that there was an outstanding question as to attorney fees, this was also resolved by the circuit court's January 21 order, where it expressly found that the Presbytery was entitled to the $3,289.30 in attorney fees and costs in defending cases 644 and 646. Consequently, where the circuit court's orders are clear as to the amount of the judgment, we find that we have appellate jurisdiction to consider the matter and proceed to consider the merits of the parties' arguments.

¶ 41                                              *Summary Judgment*

¶ 42    The circuit court's orders in the instant case were rendered in the context of summary judgment. A circuit court is permitted to grant summary judgment only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The circuit court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a circuit court's

decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). As noted, *de novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 43        Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Id.* ¶ 63. However, mere speculation, conjecture, or guess is insufficient to withstand summary judgment. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively demonstrating that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (citing *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)).

¶ 44        Where, as here, the parties have filed cross-motions for summary judgment, "they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of such cross-motions, however, does not establish that there is no genuine issue of material fact, nor does it obligate a court to render summary judgment. *Id.* We also note that we may affirm on any basis appearing in the record, whether or not the circuit court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 45                                                    *Release*

¶ 46        As noted, the primary issue raised by both parties concerns the scope of the 2010 release.

A release " 'is the abandonment of a claim to the person against whom the claim exists.' "

*Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21 (2003) (quoting *Hurd v. Wildman,*

*Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 88 (1999)); *Fuller Family Holdings, LLC v.*

*Northern Trust Co.*, 371 Ill. App. 3d 605, 614 (2007). It is a contract and is therefore governed

by contract law. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991) (citing

*Polo National Bank v. Lester*, 183 Ill. App. 3d 411, 414 (1989)). The rights of the parties are

limited to the terms expressed in the agreement, and where a release is clear and explicit, the

court must enforce it as written. *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App.

3d 614, 622-23 (1993). "Both the meaning of the instrument, and the intention of the parties[,]

must be gathered from the face of the document without the assistance of parol evidence or

any other extrinsic aids." *Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984); *Goodman v.*

*Hanson*, 408 Ill. App. 3d 285, 292 (2011).

¶ 47        In this case, both parties contend that the circuit court erred in its interpretation of the scope

of the release: the Presbytery claims that the court should have interpreted it more narrowly,

while GuideOne claims that the court should have interpreted it more broadly. We find neither

argument persuasive, and find the circuit court's interpretation of the release to be the

appropriate one.

¶ 48        The parties' arguments center around the time aspect of the release, namely, for which

years the release bars coverage for claims of abuse. Paragraph (a) of the release, which contains

the time limit, provides:

"For the consideration of $250,000 (two hundred and fifty thousand dollars) ("the Settlement Payment"), [the Presbytery] for and on behalf of the Releasing Parties, release and forever discharge the Released Parties from all claims, causes of action, demands, damages, costs, expenses, interest, compensation, actions, judgments, or suits of any kind in law or equity, including, but not limited to the claims made by [the Presbytery] against [GuideOne], arising out of or related to any and all claims *falling within the time periods set forth above, inclusive*." (Emphasis added.)

Thus, the question posed by the parties requires us to determine the "time periods set forth above, inclusive."

¶ 49 The Presbytery has identified three time periods which it claims are all plausible interpretations of this language: (1) 1981-2004, which is the overall period of the insurance policies; (2) 1988-2004, which is the time period after the first allegation of abuse contained in the John Doe lawsuits; or (3) 1988, 1995, 1996, and 1997, which are the years in which the specific John Doe plaintiffs alleged instances of abuse. The Presbytery further claims that the existence of multiple possibilities for the time range renders the release ambiguous, and looking at parol evidence establishes that its interpretation (the third, and narrowest, possibility set forth above) is the correct one. We do not find this argument persuasive.

¶ 50 First, despite the Presbytery's contentions otherwise, the circuit court did not find that there was an ambiguity with respect to the time aspect of the release. In footnotes, the court addressed potential ambiguities twice in its July 1 order, both concerning GuideOne's argument that the release should be read broadly. First, the court rejected GuideOne's attempt to argue that the release should be read broadly due to language that the release was "including, but not limited to" certain types of claims. In doing so, the court found that GuideOne's

interpretation would "[a]t best" introduce an ambiguity, which would be resolved against GuideOne. The court later found that the language of paragraph (a) was "more aptly read as a reference to the time periods of the underlying alleged claims, not the single reference to the single time period of GuideOne's relevant Policy coverage." Again, the court noted that "to the extent any ambiguity did exist in that respect," it would be resolved in favor of the narrower coverage. In both cases, then, the circuit court interpreted the release as written but then also explained why GuideOne's arguments as to broader coverage would be unavailing.

¶ 51          Additionally, we cannot find that the three possible time periods set forth by the Presbytery are all plausible readings of the release. A release, as with any contract, will be considered ambiguous if it is susceptible to more than one meaning. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007); *Whitlock*, 144 Ill. 2d at 447. Here, the only reasonable reading of the release is that the "time periods set forth above, inclusive," refers to the years in which abuse was alleged. We agree with the circuit court and the Presbytery that GuideOne's contention that the release encompasses the entirety of the policy term is wholly without merit. The release contains a single reference to the policy term in the "whereas" section, directly before setting forth the policy provisions and coverage limits applicable to the abuse claims. The majority of that section of the release, however, details the allegations of the underlying John Doe lawsuits and the years in which the plaintiffs alleged abuse. There is simply no plausible reading of the release which would result in GuideOne's expansive interpretation.[10]

---

[10] In its brief on appeal, GuideOne also intermingles different definitions of the word "inclusive" to argue for the most expansive reading. GuideOne initially quotes the correct definition applicable to this case—that "inclusive" means " 'including the stated limits or extremes.' " It then, however, quotes and relies on a different definition—that "inclusive" means " 'broad,' " " 'comprehensive,' " " 'catchall,' " and " 'global' "—which is simply not applicable to its usage in the release. While each definition may be correct in appropriate circumstances, it is clear that "inclusive" is used in the former, not latter, sense in the release, and GuideOne's attempt to intermingle the two definitions is puzzling and unhelpful.

¶ 52      We also find, however, that the Presbytery's interpretation is overly narrow and is therefore not a reasonable one. The Presbytery claims that the release should be "limited to the actual years of the specific claims that those John Doe plaintiffs raised in the four policy years 1988, 1995, 1996, and 1997." The problem with this argument is that it does not comport with the language actually contained in the release. First, while there were seven John Doe plaintiffs involved in the underlying litigation, the release contains details as to the years of abuse for only two of them: John Doe V, who was allegedly abused in 1995, 1996, and 1997, and John Doe VII, who was allegedly abused between 1997 and 2001. As to the other John Doe plaintiffs, the release discusses the allegations of those cases more generally, most commonly providing that the suits "allege[d] that Mason sexually abused children on and after January 1988."[11] While details as to the actual years of abuse may be included in the underlying lawsuits, they were not included in the language of the release itself.[12] This is fatal to the Presbytery's argument, as the release expressly references "claims falling within the time periods *set forth above*" (emphasis added), indicating that the time periods listed within the release itself—not other possible time periods not contained within the release—are the ones which limit the scope of the release.

¶ 53      Similarly, we note that the release provides that John Doe VII alleged that he was abused weekly between 1997 and 2001, yet the Presbytery argues that only the first year of abuse—in 1997—should be covered by the release. This is based on the policy's definition of "occurrence," which provided that all instances of abuse would be considered a single

_____

[11] There are three references to the suits alleging abuse of "children" beginning in 1988, and one alleging abuse after 1990.
[12] According to the representations of the parties below, GuideOne settled the initial John Doe lawsuits pursuant to its 1988, 1995, 1996, and 1997 policies, which would suggest that there were "occurrences" under the policies for each of those years.

occurrence even if they occurred over multiple years. Again, however, this does not appear within the release itself. If the parties had intended to limit the scope of the release to the years for which the Presbytery had received coverage, they could certainly have done so. See *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011) (when parties insert language into a contract, it is presumed that it was done purposefully). The release itself provides that the Presbytery "read this General Release and understand the terms of this General Release and the consequences of signing it," and that "they have had an opportunity to discuss this General Release with counsel." The terms of the release therefore cannot come as a surprise to the Presbytery. See *All American Roofing, Inc. v. Zurich American Insurance Co.*, 404 Ill. App. 3d 438, 447-49 (2010) (a party is charged with knowledge of the terms of a contract which it had the opportunity to read). The Presbytery cannot now rewrite the release to include limitations which do not appear within the release itself, especially when the release has provided that the applicable time limitations appear on the face of the release. Accordingly, we cannot find that the narrow interpretation sought by the Presbytery is a reasonable reading of the release.

¶ 54     Instead, we agree with the circuit court that the "time periods set forth above" refers to 1988 and later. In its recitation of the facts of the underlying cases, the release repeatedly references allegations that Mason sexually abused children beginning in 1988. Of the four separate lawsuits filed by the John Doe plaintiffs, the release expressly indicates that three of them alleged that Mason's abuse began in 1988; the fourth alleged that it began in 1990. None of them include an end date to the allegations, simply providing that Mason abused children "on and after" 1988 (or 1990). Consequently, the only reasonable interpretation of the release

is that claims occurring between 1988 and the end of the policies in 2004 are encompassed by the release.

¶ 55        We are unpersuaded by the Presbytery's contention that the claims at issue in the 2015 John Doe litigation could not have been released since they were not contemplated by the parties at the time of the execution of the release. A release will not be construed to include claims which were not within the contemplation of the parties at the time of its execution. *Goodman*, 408 Ill. App. 3d at 292; *Carlile v. Snap-On Tools*, 271 Ill. App. 3d 833, 838 (1995). Where the releasing party is unaware of other claims, general releases are restricted to the specific claims contained therein. *Whitlock*, 144 Ill. 2d at 447. Where, however, there are unknown claims which fall within the specific terms of the general release, such claims are barred by the release. *Goodman*, 408 Ill. App. 3d at 298.

¶ 56        Here, as the circuit court noted, "[t]he Release clearly contemplates at least some claims beyond those specifically referenced, containing multiple uses of the phrase 'any and all claims,' including 'any past, present or future claims for or related to insurance coverage...whether those claims are known or unknown or foreseen or unforeseen.' " Additionally, in the "whereas" clauses, the release references abuse of "children" beginning in 1988—not simply the abuse of any particular John Doe plaintiff. This suggests knowledge of others who may have similarly suffered abuse beyond the specific John Doe plaintiffs who had already filed lawsuits. Accordingly, we cannot find that the possibility of future claims by children alleging abuse in 1988 or later was outside the contemplation of the parties at the time they executed the release.

¶ 57        Finally, we cannot find any ambiguity in the release's use of the word "claims." The Presbytery argues that the word should be interpreted to refer only to the specific claims raised

by the original John Doe plaintiffs. The language of the release, however, is much broader. Moreover, although the word "claims" is used several times in different paragraphs, we cannot find that there is any confusion as to how the word is used in any of the paragraphs, based on the context. We therefore affirm the circuit court's judgment that the release barred coverage for the claims raised in case 576, all of which occurred post-1988, but did not bar coverage for the claims raised in cases 644 or 646.

¶ 58                                                                *Section 155*

¶ 59       The Presbytery also claims that the circuit court erred in declining to impose sanctions under section 155 of the Insurance Code. Section 155 allows for a court to impose certain sanctions, including attorney fees and costs, in an insurance coverage action where "it appears to the court that such action *** is vexatious and unreasonable." 215 ILCS 5/155(1) (West 2020). This statute was enacted by the legislature " 'to provide a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits.' " *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 680-81 (2000) (quoting *Richardson v. Illinois Power Co.*, 217 Ill. App. 3d 708, 711 (1991)). The "key question" in a section 155 claim is whether the insurer's conduct is vexatious and unreasonable. *Id.* at 681. This is a matter within the circuit court's discretion, which will not be reversed absent an abuse of that discretion. *Id.* In this case, however, the circuit court denied the Presbytery's section 155 claim on a motion for summary judgment. Accordingly, we review its denial *de novo*. See *Nine Group II, LLC v. Liberty International Underwriters, Inc.*, 2020 IL App (1st) 190320, ¶ 37 (finding a *de novo* standard of review appropriate where a section 155 claim is disposed of

through summary judgment); *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 29 (same).

¶ 60        Section 155 sanctions are inappropriate where there is a *bona fide* dispute regarding coverage. *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 380 (2001); *Nine Group II*, 2020 IL App (1st) 190320, ¶ 44. " '*Bona fide*' is defined as '[r]eal, actual, genuine, and not feigned.' " *McGee*, 315 Ill. App. 3d at 683 (quoting Black's Law Dictionary 177 (6th ed. 1990)). Where an insurer reasonably relies upon evidence sufficient to form a *bona fide* dispute, the insurer has not acted unreasonably and vexatiously under section 155. *Nine Group II*, 2020 IL App (1st) 190320, ¶ 44.

¶ 61        In this case, the circuit court found that, while the Presbytery largely prevailed on its coverage claims, GuideOne's position as to coverage was not vexatious and unreasonable. The court noted that a denial of coverage is not vexatious simply because the insurer's position is later rejected in court, and further observed that GuideOne did, in fact, ultimately prevail as to its claims with respect to case 576, "adding weight to its argument that its related coverage denials were based on a *bona fide* dispute." We can find no error with this conclusion. At the summary judgment stage, the question is whether GuideOne had a genuine basis for disputing the policy coverage. See *id.* ¶ 50. Thus, even if the Presbytery had evidence suggesting that the 2015 John Doe lawsuits fell within the scope of coverage, "the grant of summary judgment is appropriate as long as the evidence before [GuideOne], *in total*, created a reasonable, genuine basis for dispute." (Emphasis in original.) *Id.* Here, the dispute between the parties centered around interpretation of the release. While we have ultimately concluded that the release did not encompass claims of abuse occurring prior to 1988, GuideOne's position had a basis in the

language of the release and cannot be said to be vexatious or unreasonable. Accordingly, the circuit court properly declined to impose sanctions under section 155.

¶ 62                                    CONCLUSION

¶ 63        For the reasons set forth above, we affirm the judgment of the circuit court. GuideOne had a duty to defend and indemnify the Presbytery in cases 644 and 646, but had no such duty in case 576, as coverage for the claims alleged in that suit were barred by the 2010 release. The circuit court, however, properly found that GuideOne's denial of coverage was not vexatious and unreasonable so as to subject it to sanctions under section 155 of the Insurance Code.

¶ 64        Affirmed.